IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BEVERLY J. HILL and BUSY SCRAPPIN' LLC, | ) ) ) | |
| Plaintiff, | ) ) | 8:09CV275 |
| v. | ) ) | |
| THE ANTIOCH COMPANY, | ) ) | MEMORANDUM OPINION |
| Defendant. | ) ) | |

This matter is before the Court on plaintiffs Beverly Hill and Busy Scrappin' LLC's ("Busy Scrappin'") complaint and application to stay or dismiss arbitration proceedings commenced by defendant (Filing No. 10-2 at CM/ECF 2-10 ("complaint")). Upon review, the Court finds Hill's request for an order staying/dismissing arbitration should be denied, Busy Scrappin's request for an order staying/dismissing arbitration should be granted, and plaintiffs' request for all other relief should be denied.

### BACKGROUND

Hill is a citizen and resident of Nebraska (Complaint, ¶ 1). Defendant, The Antioch Company, is a limited liability company organized under the laws of Delaware, with its principal place of business in Ohio (Filing No. 11, ¶ 3). Creative Memories is a division of defendant that oversees the operation of the Creative Memories product distribution system, which consists of various scrapbooking and related materials

(Complaint, ¶ 4).  Creative Memories is headquartered and operates in St. Cloud, Minnesota (*Id.*).  Creative Memories products are sold to the public by Creative Memories consultants (Filing No. 10-3 at CM/ECF 3-4, ¶ 5).

On June 30, 2001, Hill signed a Consultant Agreement with defendant and became a Creative Memories sales consultant (Complaint, ¶¶ 9, 11).  Paragraph 9 of the Consultant Agreement contained a noncompete provision, which provided Hill could not "own or operate a scrapbook, craft or sticker store or a scrapbook related internet business in a geographic location within 20 miles" of Hill's Creative Memories customers for a period of one year after termination of the Consultant Agreement (Complaint, ¶ 12; Filing No. 10-2 at CM/ECF 11-12 ("Consultant Agreement")).[1]  Paragraph 19 of the Consultant Agreement contained the following choice-of-law, venue, and arbitration provisions:

> **19. Governing Law/Venue/Arbitration.**  This Agreement is entered into and is to be performed in material part in the State of Minnesota and accordingly is subject to and will be construed under the substantive laws of the State of Minnesota.  Rules governing conflict of laws for all states do not apply.  Except as set

---

[1] The filed version of the Consultant Agreement is somewhat difficult to read, but defendant has provided the Court with a photocopy of the original document and the original carbon copy which are easily readable.

-2-

>           forth in the Manual, any claims or
>           actions arising out of this
>           Agreement will be submitted to
>           binding arbitration in accordance
>           with the Commercial Arbitration
>           Rules of the American Arbitration
>           Association, and all arbitration
>           hearings will be held in St. Cloud,
>           Minnesota.  The party that prevails
>           at arbitration will be entitled to
>           reimbursement by the other party of
>           its costs and expenses incurred in
>           the arbitration, including without
>           limitation the prevailing party's
>           reasonable attorneys' fees.

(Consultant Agreement, ¶ 19)(emphasis in original).

On February 28, 2009, Hill notified defendant that she was terminating the Consultant Agreement (Complaint, ¶ 22).  In approximately May 2009, Hill opened and began operating Busy Scrappin' in Bellevue, Nebraska, which inter alia, sells scrapbooking materials (*Id.*, ¶ 27; Filing No. 18 at CM/ECF 6).

Upon learning that Hill opened Busy Scrappin', defendant filed a demand for arbitration against plaintiffs on July 21, 2009, alleging plaintiffs breached the Consultant Agreement (Filing No. 10-3).  Specifically, defendant claimed Hill breached the Consultant Agreement's noncompete provision and a provision regarding the use of defendant's confidential business information (*Id.*).  The demand for arbitration seeks primarily injunctive relief, along with defendant's costs and attorneys' fees incurred in arbitration (*Id.*).  The demand for

arbitration requests a hearing locale of St. Cloud, Minnesota. (*Id.*).

In response, plaintiffs filed a complaint and application to stay or dismiss arbitration pursuant to Neb. Rev. Stat. § 25-2603(b) in the District Court of Sarpy County, Nebraska (Complaint). Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1441, 1446, and 1332.

The parties have fully briefed plaintiffs' request for an order to stay/dismiss arbitration, and the matter is ripe for adjudication.

### DISCUSSION

Plaintiffs brought this action pursuant to Neb. Rev. Stat. § 25-2603(b), which provides:

> On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

Plaintiffs claim they are entitled to relief under § 25-2603(b) because there is "no agreement to arbitrate" between plaintiffs and the defendant. Plaintiffs first claim there is "no agreement to arbitrate" because the arbitration provision in the Consultant Agreement is invalid due to unconscionability. Plaintiffs also

claim there is "no agreement to arbitrate" because defendant's demand for arbitration is primarily based on an alleged breach of the Consultant Agreement's noncompete provision, and according to plaintiffs, the noncompete provision is unenforceable. Finally, Busy Scrappin' argues that even if the arbitration provision in the Consultant Agreement is valid, Busy Scrappin' is not bound by the provision because it was not a signatory to the Consultant Agreement. Each argument is addressed below.

**I. PLAINTIFFS' CLAIM THAT THERE IS "NO AGREEMENT TO ARBITRATE" BECAUSE THE ARBITRATION PROVISION IN THE CONSULTANT AGREEMENT IS UNCONSCIONABLE**

Plaintiffs first claim there is "no agreement to arbitrate" between plaintiffs and defendant because the arbitration provision in the Consultant Agreement is unenforceable due to unconscionability. Defendant claims the Court lacks authority to determine the validity of the arbitration provision, and alternatively, the provision is valid and enforceable.

**A. THE COURT'S AUTHORITY TO DETERMINE THE VALIDITY OF THE ARBITRATION PROVISION IN THE CONSULTANT AGREEMENT**

Defendant argues the Court lacks authority to determine the issue of validity because the parties incorporated the Commercial Arbitration Rules of the American Arbitration Association ("AAA") into their arbitration agreement  (see Consultant Agreement, ¶ 19), and Rule 7(a) of the Commercial Arbitration Rules provides "[t]he arbitrator shall have the power

to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (Filing No. 24-7 at CM/ECF 4). Defendant argues that because the parties incorporated Rule 7(a) into their arbitration agreement, only the arbitrator has the authority to determine the issue of validity.

The fact that the AAA rules are incorporated into the parties' arbitration agreement is relevant to the Court's authority to determine the issue of arbitrability (i.e. whether the parties' dispute falls within the scope of the arbitration provision), but it does not impact the Court's authority to determine the validity of the arbitration provision. In *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009), the Eighth Circuit found that when parties incorporate the AAA rules into their arbitration agreement, the parties demonstrate their "clear and unmistakable" intent to leave the question of arbitrability to the arbitrator and not the court. However, the Eighth Circuit impliedly found that even where the parties agree to leave the issue of arbitrability to the arbitrator, a federal court retains the authority to determine the issue of validity in the first instance. *See id.* at 878-79 (discussing and reviewing the district court's determination of validity after finding the district court lacked authority to determine the issue of arbitrability). Accordingly, the Court finds it has authority to

determine whether the arbitration provision in the Consultant Agreement is valid.

**B. THE FEDERAL ARBITRATION ACT**

The Court finds the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., applies in this case.[2]  The FAA reflects a strong federal policy favoring arbitration.  *See Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004).  Under the FAA, a written arbitration agreement is valid and enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Generally applicable contract defenses, such as unconscionability, may render an arbitration agreement unenforceable.  *See E.E.O.C. v. Woodmen of World Life Ins. Soc'y,* 479 F.3d 561, 565-66 (8th Cir. 2007).  The validity of an arbitration agreement is governed by state contract law.  *Id.* at 565.

To determine whether the arbitration provision contained in the Consultant Agreement is unconscionable, it is necessary to determine which State's law applies.

**C. STATE LAW APPLICABLE TO THE CONSULTANT AGREEMENT**

The Consultant Agreement contains a choice-of-law provision that states the Consultant Agreement is subject to Minnesota law (Consultant Agreement, ¶ 19).  Defendant claims

---

[2] The FAA applies to a written arbitration agreement in any contract "evidencing a transaction involving commerce."  9 U.S.C. § 2.

Minnesota law governs the Consultant Agreement due to the choice-of-law provision.  Plaintiffs claim the choice-of-law provision is unenforceable, and Nebraska law governs the Consultant Agreement.[3]

In an action based on diversity jurisdiction, the Court applies Nebraska's conflict of law rules to determine which State's law applies.[4]  *See DCS Sanitation Mgmt., Inc. v. Casillo*, 435 F.3d 892, 895 (8th Cir. 2006).  Nebraska follows § 187 of the Restatement (Second) of Conflict of Laws in determining the validity of a choice-of-law provision.  *Id.* at 895-96.  In this case, § 187(2) applies,[5] which provides:

---

[3] While each party argues the Consultant Agreement is governed by a different State's law, each party ultimately contends that a determination of the arbitration provision's validity is not impacted by the Court's determination of which State's law applies.  Accordingly, plaintiffs claim the arbitration provision is unconscionable under both Nebraska and Minnesota law, and defendant claims the arbitration provision is valid under both Nebraska and Minnesota law.

[4] The Consultant Agreement states: "Rules governing conflict of laws for all states do not apply."  (Consultant Agreement, ¶ 19).  Defendant does not offer any meaningful argument that this provision is enforceable, nor does the Court find it is bound by this provision.

[5] Section 187(1) of the Restatement (Second) of Conflict of Laws does not apply in this case because the primary dispute in the underlying arbitration is whether plaintiffs breached an enforceable noncompete provision, and as discussed below, Minnesota law and Nebraska law differ on whether a court may reform an unenforceable noncompete provision.  *See DCS Sanitation Mgmt., Inc.*, 435 F.3d at 896 (finding § 187(1) did not apply to choice-of-law question in action regarding alleged breach of a noncompete provision where the law of two states differed on the issue of reformation of an unenforceable noncompete provision).

-8-

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied. . . unless either
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188,[6] would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2).

---

[6] Section 188 of the Restatement (Second) of Conflict of Laws states in relevant part:

> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

-9-

Here, the Consultant Agreement's choice-of-law provision should not be enforced because Minnesota law is contrary to a fundamental policy of Nebraska, and Nebraska has a materially greater interest than Minnesota in the enforcement of the Consultant Agreement.  First, Minnesota law is contrary to a fundamental policy of Nebraska because under Minnesota law courts may modify an unreasonable noncompete provision in order to make it enforceable, *see Davies & Davies Agency, Inc. v. Davies,* 298 N.W.2d 127, 131 n.1 (Minn. 1980), while Nebraska does not permit the reformation of unreasonable noncompete provisions, *see H & R Block Tax Servs., Inc. v. Circle A Enter., Inc.*, 269 Neb. 411, 415-416, 693 N.W.2d 548, 552-53 (2005).  *See DCS Sanitation Mgmt., Inc.,* 435 F.3d at 897 (finding application of Ohio state law would be contrary to a fundamental policy of Nebraska because Ohio courts are permitted to reform overly broad or unreasonable noncompete agreements).  In addition, Nebraska's interests in the Consultant Agreement are substantial and materially greater than Minnesota's interests.  Minnesota has some interest in the Consultant Agreement because Creative Memories is located in Minnesota, product ordered by Hill was shipped from Minnesota, and Minnesota has an interest in ensuring that the businesses that locate there enjoy uniform enforcement of their contracts, but these interests are outweighed by Nebraska's interests.  Hill is a resident of Nebraska, she was presented with and signed the

Consultant Agreement in Nebraska, and the services Hill performed under the Consultant Agreement were primarily performed in Nebraska. In addition, Nebraska has a significant interest in the employment of its citizens. *See id.* at 896.

In light of the foregoing, the Consultant Agreement's choice-of-law provision is unenforceable, and Nebraska law applies.

### D. UNCONSCIONABILITY UNDER NEBRASKA LAW

Having concluded that Nebraska law applies, the Court must next determine whether the Consultant Agreement's arbitration provision is unconscionable under Nebraska law.

"Under Nebraska law, 'the term unconscionable means manifestly unfair or inequitable.'" *Woodmen of World Life Ins. Soc'y*, 479 F.3d at 566 (quoting *Myers v. Neb. Inv. Council*, 272 Neb. 669, 692, 724 N.W.2d 776, 799 (2006))(internal quotation marks omitted). Nebraska courts consider both procedural and substantive unconscionability. *See id.* A contract is substantively unconscionable if its terms are grossly unfair under the circumstances that existed when the parties entered into the contract. *Id.* An essential element in determining procedural unconscionability is "the disparity in respective bargaining positions of parties to a contract." *Id.* (quoting *Myers*, 272 Neb. at 693, 724 N.W.2d at 799). However, inequality in bargaining power is insufficient by itself to find an

-11-

arbitration agreement unconscionable. *See id.* "Unconscionability is determined in light of all the surrounding circumstances, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print." *Hollins v. Debt Relief of Am.*, 479 F. Supp. 2d 1099, 1106 (D. Neb. 2007)(quoting *Parizek v. Roncalli Catholic High Sch.*, 11 Neb. App. 482, 486, 655 N.W.2d 404, 408 (Neb. Ct. App. 2002)).

Applying these principles to the case-at-hand, the Court does not find that the Consultant Agreement's arbitration provision is unconscionable. The Consultant Agreement is a boilerplate agreement, which was drafted by a party with superior bargaining power, and the Court will assume that Hill would not have been permitted to negotiate the terms of the agreement. While these facts require the Court to carefully scrutinize the validity of the Consultant Agreement, they do not necessarily render the agreement unconscionable. *See Woodmen of World Life Ins. Soc'y*, 479 F.3d at 566 (adhesion contracts are not automatically unconscionable under Nebraska law). When all of the surrounding circumstances are considered, the arbitration provision in the Consultant Agreement is not unconscionable.

First, the circumstances of this case weigh against a finding of procedural unconscionability.  Hill sought out and contacted another Creative Memories consultant, Brenda Patton, about the possibility of becoming a Creative Memories consultant.  The individuals met, and at the conclusion of the meeting, Hill told Patton that she wanted to sign the Consultant Agreement immediately.  Patton provided Hill with the agreement, and although Hill apparently signed the agreement without thoroughly reviewing its terms, nothing in the record suggests that Hill could not have taken ample time to review the document if she had chosen to do so.

The arbitration provision is not difficult to read or find in the Consultant Agreement.  The agreement is a one-page document with writing on both sides.  The front side of the agreement contains the application form, and the back side of the agreement contains the contract language.  The contract language is printed in small font, but it is not difficult to read, and the arbitration provision is in the same size font as the remaining contract language.  In addition, the arbitration provision is introduced by a heading that is in bold type that states: **Governing Law/Venue/Arbitration**, and the provision appears directly above a signature line on the back side of the Consultant Agreement.  Ultimately, Hill signed both sides of the Consultant Agreement, and therefore, she cannot reasonably claim

that she was not aware of the contract language on the back side of the agreement.[7] It is not clear from the record whether Hill received a copy of the Consultant Agreement after she signed the agreement, but Patton's affidavit states she typically provided a copy of the signed agreement to the new consultant. Under the facts of this case, the arbitration provision is not procedurally unconscionable.

Second, plaintiffs have not sufficiently shown that the terms of the arbitration provision are substantively unconscionable. Plaintiffs claim the arbitration provision is substantively unconscionable due to the prohibitive costs of arbitration. Specifically, they claim the costs are prohibitive because a fee-shifting provision in the Consultant Agreement could require them to pay all of defendant's costs, including attorneys' fees, if defendant prevails in the arbitration.[8] In addition, plaintiffs claim that the costs they will incur to attend an arbitration in Minnesota are prohibitive. Plaintiffs

---

[7] Defendant provides the Consultant Agreement in triplicate, such that defendant receives a copy of the signed agreement, the new consultant's "upline consultant" retains a copy, and the new consultant receives a signed copy. Hill signed the front side of the top copy of the Consultant Agreement and the back side of the second copy of the Consultant Agreement.

[8] The Consultant Agreement provides in relevant part: "The party that prevails at arbitration will be entitled to reimbursement by the other party of its costs and expenses incurred in the arbitration, including without limitation the prevailing party's reasonable attorneys' fees." (Consultant Agreement, ¶ 19).

claim these costs will prevent them from being able to sufficiently defend against the claims asserted by defendant and preclude them from asserting a counter-claim they might have against the defendant.

An arbitration provision may be unconscionable if the costs of arbitration impose too heavy of a financial burden on a party. *See Faber*, 367 F.3d at 1053. Whether the costs of arbitration render an arbitration agreement unenforceable is to be determined on a case-by-case basis. *See id.* To prove an arbitration provision is unconscionable on this ground, a party must submit specific evidence of the likely costs of arbitration and the party's financial inability to pay such costs. *See id.* at 1054.

In this case, plaintiffs have not sufficiently shown that the costs of arbitration render the arbitration provision unconscionable. As an initial matter, the portion of the fee-shifting provision that permits the prevailing party to recover attorneys' fees is unenforceable under Nebraska law. *See GFH Fin. Servs. Corp. v. Kirk*, 231 Neb. 557, 567, 437 N.W.2d 453, 459 (1989)(stating attorney fees are recoverable in Nebraska only where provided by statute or allowed by custom, and a contractual provision that permits a prevailing party to recover attorney fees in the event of any dispute involving the contract is

-15-

contrary to public policy and void).[9]  As such, plaintiffs will not have to pay defendant's attorneys' fees.

With regard to the other costs plaintiffs might incur in arbitration, there is insufficient evidence that those costs are so prohibitive that they render the arbitration provision unconscionable.  The Court is skeptical as to whether the remainder of the fee-shifting provision (payment of the prevailing party's costs and expenses other than attorneys' fees) is enforceable, but the record lacks sufficient evidence to support such a finding.  While plaintiffs submitted evidence of the likely costs of arbitration, they have not submitted evidence of their financial situation or sufficient evidence of their inability to pay such costs.  Even if the Court were to find the remainder of the fee-shifting provision were unconscionable, such a finding would not impact the validity of the arbitration provision because the fee-shifting provision could be severed. *See Faber*, 367 F.3d at 1054 (applying Iowa law)(directing the district court to sever the fee-splitting provision if found

---

[9] The fact that the attorneys' fees portion of the fee-shifting provision is unenforceable does not impact the validity of the arbitration agreement because this portion of the fee-shifting provision can be properly severed from the Consultant Agreement.  *See* Consultant Agreement, ¶ 18, *see GFH Fin. Servs. Corp.*, 231 Neb. at 567, 437 N.W.2d at 459; *see Faber*, 367 F.3d at 1054 (applying Iowa law)(directing the district court to sever the fee-splitting provision if found unconscionable).

unconscionable).  Accordingly, the fee-shifting provision does not render the arbitration provision unenforceable.

Plaintiffs' remaining claims regarding the costs of arbitration also fail.  Plaintiffs have not offered sufficient evidence that the costs of having to arbitrate their dispute in Minnesota is grossly unfair or will otherwise prevent them from being able to sufficiently defend against the claims brought by defendant, and plaintiffs' claim that the costs of arbitration will prevent them from asserting a counter-claim they might have against defendant is wholly speculative, as plaintiffs have not offered evidence regarding the value of the potential counter-claim.  Without knowing the value of the claim or plaintiffs' financial status, the Court cannot say that the costs of arbitration will prevent plaintiffs from asserting the claim.

Based on the foregoing, the Court finds the arbitration provision in the Consultant Agreement is not unconscionable.  The portion of the fee-shifting provision in the Consultant Agreement that permits the prevailing party to recover attorneys' fees is unenforceable under Nebraska law, but that portion can be severed from the Consultant Agreement.

**II. PLAINTIFFS' CLAIM THAT THERE IS "NO AGREEMENT TO ARBITRATE" BECAUSE THE NONCOMPETE PROVISION IN THE CONSULTANT AGREEMENT IS UNENFORCEABLE**

Plaintiffs next claim there is "no agreement to arbitrate" between plaintiffs and defendant because defendant's

demand for arbitration is primarily based on an alleged breach of the noncompete provision in the Consultant Agreement, and according to plaintiffs, the noncompete provision is unenforceable.  Because this challenge is not a challenge to the validity of the arbitration provision itself, the Court does not have authority to address it, and the issue must be decided by the arbitrator in the first instance.  *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006).

**III. BUSY SCRAPPIN'S CLAIM THAT IT IS NOT BOUND BY THE ARBITRATION PROVISION IN THE CONSULTANT AGREEMENT**

Busy Scrappin' claims that even if there is an enforceable agreement to arbitrate between Hill and defendant, Busy Scrappin' cannot be bound by the arbitration provision because it was not a signatory to the Consultant Agreement.[10]  Defendant claims Busy Scrappin' is bound by the arbitration agreement in the Consultant Agreement as a non-signatory under either an agency theory or an alter ego theory.  Defendant's claims lack support in the record.

Busy Scrappin' cannot be bound by the arbitration provision under an agency theory because it did not exist when Hill signed the Consultant Agreement, and did not come into

---

[10] Plaintiffs also claim defendant cannot enforce the arbitration provision because it did not sign the Consultant Agreement.  The Court finds this argument lacks merit as there is no dispute that both Hill and the defendant performed under the Consultant Agreement for several years.

-18-

existence until much later. *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995). Further, the Court does not find any basis for binding Busy Scrappin' to the arbitration agreement under an alter ego theory, as defendant has not presented evidence of fraud or other facts that would support such a theory. *See id.* at 777-78. Accordingly, Busy Scrappin' is not bound by the arbitration provision in the Consultant Agreement.

## CONCLUSION

The arbitration provision in the Consultant Agreement is not unconscionable, and there is an enforceable agreement to arbitrate between Hill and defendant. Busy Scrappin' was not a signatory to the Consultant Agreement, and defendant has not sufficiently identified any basis for binding Busy Scrappin' to the arbitration provision in the Consultant Agreement as a non-signatory. Therefore, there is no agreement to arbitrate between Busy Scrappin' and defendant. A separate order will be entered in accordance with this memorandum.

DATED this 17th day of November, 2009.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court